FILED

2021 MAR 22  PM 1: 30

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

1  Carl Wescott
2  8210 E. Via de la Escuela
   Scottsdale, AZ 85258
3  *in propria persona*
   +1 936 937 2688
4  carlwsoj@gmail.com

5

6                    **UNITED STATES DISTRICT COURT**

7                    **MIDDLE DISTRICT OF FLORIDA**

8                    **JACKSONVILLE DIVISION**

9  CARL WESCOTT,                    Civil Action No. **3:21-cv-319-MMH-JRK**

10                                  **PLAINTIFF'S COMPLAINT FOR**
                 Plaintiff,         **IMPOSITION OF CONSTRUCTIVE**
11 vs.                              **TRUST; NEGLIGENCE, BREACH**
                                    **OF FIDUCIARY DUTY; BREACH**
12                                  **OF CONTRACT; BREACH OF THE**
   JOSEPH MARTIN;                   **COVENANT OF GOOD FAITH AND**
13 LEIGH LIGHTFOOT;                 **FAIR DEALING; BREACH OF THE**
                                    **SETTLEMENT; INDUCING**
14               Defendants.        **FIDUCIARY BREACH OF**
                                    **TRUSTEE; MISAPPROPRIATION**
15 + DOES 1 through 25              **OF TRADE SECRETS UNDER THE**
                                    **DEFEND TRADE SECRETS ACT**
16                                  **and AN ACCOUNTING**

17                                  JURY TRIAL REQUESTED

18

19       Plaintiff Carl Wescott, proceeding *pro se*, complains of Defendants Joseph Martin and Leigh

20 Lightfoot and in support of his complaint, the Plaintiff states as follows:

21

22 **PARTIES**

23 1. The Plaintiff is an individual who resided in San Francisco, California for many years, including

24    during the initial years of the Parties' partnership.  The Plaintiff is currently a resident of

25    Scottsdale, Arizona.

26 2. The first Defendant, Joseph Martin ("Martin") is an individual presently living in Florida.

                                                                                  1

3. The second Defendant, Leigh Lightfoot ("Lightfoot") also presently lives in Florida. Martin and Lightfoot were married during the initial years of the parties' malfeasance and may still be married.

4. All acts complained of herein were undertaken by Martin for the benefit of the marital community with Lightfoot. All acts complained of herein were undertaken by Lightfoot for the benefit of the marital community with Martin. Martin and Lightfoot worked closely together in committing the fraudulent acts and breaches of duty complained of herein and will be referred to collectively as "Defendants".

5. In addition, upon information and belief, there are more Defendants currently unknown to Plaintiff, which shall emerge with the benefit of legal discovery. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Mr. Martin and Ms. Lightfoot, as individuals, in addition to acting for himself and herself and on his and her own behalf individually, as well as for the benefit of the marital community, are and were acting as the agents, servants, employees, and/or representatives of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the actions, failures to act, breaches, conspiracy, and misappropriations alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and all of the Defendants.

**JURISDICTION**

6. This Court has jurisdiction pursuant to 28 USC 1332, there being diversity of citizenship and the amount in controversy exceeding $75,000 exclusive of fees and costs.

**VENUE AND JURISDICTION**

7.  Venue is proper in this Court, which can assert *in personam* jurisdiction over these Defendants, because the Defendants are Florida residents.

**BRIEF CASE SUMMARY**

8.  This case is related to a partnership contract to purchase and develop property in Honduras, and the actions of the Parties during the course of their partnership and thereafter.  The Plaintiff trusted the Defendants with his proprietary business methods and advanced significant sums to money to them to serve as his agents on the ground as part of a five-year contract.  As part of the contract, Plaintiff lent the Defendants a six-digit sum (advances on future profits expected).  The Defendants performed poorly, absconded from the country prematurely, have not repaid Plaintiff's loans, and have breached fiduciary duties to the Plaintiff.  These acts not only have cost Plaintiff significant sums of money and significant time and opportunity cost, but also have destroyed any chance the partnership (and therefore all relevant parties herein) had to earn millions of dollars in profit on the project.

**A. The Parties' Contract**

9. In 2006 the Plaintiff was a successful international real estate developer having recently sold out multiple phases of a residential development in Vilcabamba, Ecuador. The Plaintiff realized that Central and South American venues were increasingly attractive to American expatriates because of the relatively low cost of living and the climate and scenic beauty. The Plaintiff's business model was to identify promising parcels and do the preliminary work of development, hiring architects, making initial infrastructural improvements, obtaining permits, and marketing the development concept. With the permits the value of properly obtained land could go up 2 to 10+ times. The Plaintiff could then borrow against the improved value of the land to fund infrastructure improvements and sell lots (and sometimes houses, too) through marketing channels at a substantial profit.

10. The Plaintiff's business methods (hereafter "Plaintiff's Trade Secrets") were proprietary and protectable under the California Trade Secrets Act, *California Civil Code 3426 et seq*. At all times, the Plaintiff took all reasonable precautions to protect Plaintiff's Trade Secrets.

11. More relevant to this Court, Plaintiff's Trade Secrets were proprietary and protectable under the *Defend Trade Secrets Act*, Pub.L. 114–153, 130 Stat. 376, enacted May 11, 2016, codified at 18 U.S.C. § 1836, et seq.

12. The Plaintiff's plan was to ramp up to multiple projects which he would identify, using his expertise, building on his track record of success. If the Plaintiff was to obtain the scale he required, he would need trustworthy agents and partners on the ground at each location.

13. The Plaintiff initially met Joseph Martin in the software industry. Martin mentioned that he and Lightfoot owned multiple properties in Roatan, Honduras.

4

14. Defendants later represented themselves as competent and experienced in sales and property management. Martin and Lightfoot planned to retire in Honduras within about five years of the parties' initial discussions, and already knew the area well and had many relevant contacts.

15. Based on those representations, the Plaintiff entered into a five-year contract with the Defendants to manage a development project in Honduras ("the Project") commencing in 2007. The Project, if executed properly, would have led to millions of dollars in profits for the Plaintiff (and an amount to Defendants that would have exceeded the amounts loaned to Defendants).

16. Under the terms of the parties' contract, the Plaintiff advanced (e.g. loaned) the Defendants relocation expenses and living expenses of $4,000 per month.

17. Under the terms of the contract and the law of California, the Defendants were agents of the Plaintiff, entrusted with the responsibility to act on the Plaintiff's behalf and to receive monies for the benefit of the Plaintiff. The Defendants were also entrusted with substantial loans from the Plaintiff against future profits of the Project. Accordingly, the Defendants were fiduciaries who owed the Plaintiff a duty of honesty, transparency, fair dealing and best efforts in discharging their contractual responsibilities.

18. The Plaintiff also entrusted the Defendants with Plaintiff's Trade Secrets with a proper and limited disclosure in the context of the parties' contractual and fiduciary relationship.

19. The Plaintiff invested approximately $1,100,000 to buy the land for the Property and over $500,000 in design and engineering fees. When loans to the Defendants, travel, legal expenses and other out-of-pocket expenses are added in, the Plaintiff invested at least $2,000,000 in the Project.  With the accounting requested herein, the exact sum shall emerge.

20. For the first three years of the five-year contract, the Defendants lived in Honduras.  However, the Defendants essentially began their planned retirement in Honduras about five years early. The Defendants did not devote adequate time to the Project with the result that they never even obtained the preliminary permits for a residential subdivision on the subject property that Plaintiff had purchased.

21. Plaintiff later obtained the needed permits after the Defendants left Honduras, abandoning the project.  The Defendants left Honduras when they realized that further loans would not be forthcoming without their making progress on the project.

22. By this time, as the Defendants knew, the Plaintiff was experiencing acute financial difficulties, created and or exacerbated by their own under-performance on the Project. Even though the Defendants had breached the contract by under-performing and leaving prematurely, the Defendants sued the Plaintiff for their last two years of compensation to which they were plainly not entitled. The Defendants were aware that, because of financial difficulties to which they had contributed, the Plaintiff was not in a position to hire attorneys for the purpose of defending their lawsuit.

23. In the course of the Defendants lawsuit, they judicially admitted that they were partners with the Plaintiff and they judicially admitted that they owed the Plaintiff the "highest good faith and fair dealing in connection with the objectives of the partnership". (Defendant's Complaint, par. 32). A true and correct copy of Defendant's complaint is attached hereto as Exhibit "A".

24. On June 29, 2010 Plaintiff entered into a stipulated judgment with the Plaintiffs for $140,000 pursuant to a Settlement Agreement ("the Settlement"). A true and correct copy of the Settlement is attached hereto as Exhibit "B". The Settlement contained a confidentiality

provision, paragraph 14. Paragraph 14 prohibited either party from disclosing, *directly or indirectly* any "Settlement Information" (emphasis added).

25. The Defendants specifically breached their fiduciary and contractual duties to the Plaintiff during the course of the Plaintiff's bankruptcy in 2014. The Property was very difficult to sell at that time.

26. It is extremely likely that the Plaintiff's Bankruptcy Trustee would have been unable to sell the Property with the result that title and control would have reverted to the Plaintiff at the close of the bankruptcy.  The Plaintiff had been successful on other occasions in compelling his Bankruptcy Trustee to abandon property and he had a reasonable expectation of being successful in this instance.

27. However, the Defendants intervened, and in a complete breach of fiduciary duties to Plaintiff helped the Trustee sell the subject property to a third party, unlawfully and improperly charging a commission; unlawfully and improperly misusing the confidential information of the Plaintiff; and unlawfully and improperly disclosing Settlement Information in the process.  As the Trustee will testify during the trial, without Defendants' interference Trustee almost certainly would have abandoned the property, and thus Plaintiff would have been able to develop the property.

28. Upon information and belief, Martin falsely represented himself as a real estate agent or broker. Martin was paid a commission on the sale of the property, but Plaintiff is unaware that Martin is a real estate broker or an agent working for and through a licensed real estate broker. Martin also misrepresented the true value of the property to the trustee with the result that the property was sold at an absurdly discounted "fire sale" price.

29. After Plaintiff obtained permits (since the Defendants had never successfully accomplished their first important task in their project:  namely, to obtain permits for a residential subdivision) the land was valued at almost four million dollars, more than double what the Plaintiff had invested. With infrastructure in, developed property would have sold for a multiple of that amount, in excess of ten million dollars, as per the licensed and bonded appraiser who evaluated the prospects and values. The Defendants' goal was to maliciously harm the Plaintiff and pocket an improper and unlawful commission on the sale.

## Count I - Imposition of Constructive Trust

30. Plaintiff realleges paragraphs 1-29 as if fully set out herein.

31. The Defendants have formally stipulated that they were, at all relevant times, the partners of the Plaintiff and owed him a duty of loyalty and honesty.

32. The Plaintiff advanced expenses, including moving and living expenses, to the Defendants out of the anticipated profits of the Project ("the Plaintiff's Advances").

33. The Defendants expressly and/or contractually promised to use the Plaintiff's Advances for the benefit of the Project ("The Defendants' Promise").

34. The Defendants breached the Defendants' Promise by failing to devote sufficient energy to the Project and unilaterally terminating their Project efforts.

35. The parties were in a confidential, partnership relationship.

36. In reliance on the Defendants' Promise, the Plaintiff relinquished control of the Plaintiff's Advances in an amount to be determined after an accounting but believed by the Plaintiff to be in the approximate amount of greater than $150,000.

37. The Defendants were unjustly enriched by their breach of the Defendants' Promise by gaining control of Project and partnership assets through deception and for no valid consideration.

38. Under principles of equity, this Court should impose a Constructive Trust on the full amount of the Plaintiff's Advances subject to an accounting.

## Count II - Breach of the Settlement - Martin

39. Plaintiff realleges paragraphs 1-29 as if fully set out herein.

40. The Defendant Martin breached the Settlement by gratuitously disclosing Settlement Information directly and indirectly to the Trustee and to the extent that the Defendant misused the Plaintiff's confidential information to effect the sale and solicited a bribe or kickback for producing a buyer for the property.

41. The Plaintiff seeks rescission of the Settlement by reason of the Defendants' material breach thereof.

## Count III – Breach of the Covenant of Good Faith & Fair Dealing – Martin

42. Plaintiff realleges paragraphs 1-29 as if fully set out herein.

43. The Plaintiff performed all conditions required of him by the Settlement or, alternatively, the conditions were excused by the Plaintiff's Bankruptcy.

44. Defendant Martin interfered with the Plaintiff's right to receive the benefits of the Settlement, by: (a) gratuitously disclosing Settlement Information directly and indirectly to the Trustee; (b) misusing the Plaintiff's confidential information to effect the Trustee sale; (c) misrepresenting the value of the property to the trustee; and soliciting a bribe and/or kickback for producing a buyer for the propery.

45. Plaintiff has been damaged by the Defendants' breaches of contract by the loss of amounts loaned to the Defendants and the loss of the value of the Property sold by the Trustee and the loss of time and related opportunity costs imposed by the Defendants' fraudulent lawsuit.

## Count IV – Inducing Fiduciary Breach of Trustee – Martin

46. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

47. Defendant Martins' request for a "commission" in connection with the sale of the property violated 18 USC 152 (6) as the solicitation of a bribe from the Trustee.

48. The Trustee beached his duty by paying Martin an unlawful commission which was in fact a bribe. The commission was unlawful because Martin was not a licensed real estate broker, nor an agent working for a real estate broker, and thus Martin could not legally take a percentage of a real estate sale.

49. Defendant Martin wrongfully induced the Trustee to breach his trust and in doing so was acting entirely for his own financial gain and in derogation of his judicially admitted duty to the partnership. *City of Atascadero v. Merrill Lynch, Fenenr & Smith*, (1998) 68 Cal.App.4th 462.

50. The Plaintiff has been damaged by Martin's and Lightfoot's inducement of breach of trust in that he loaned monies to the Defendants (not repaid); he lost the (actual, full) value of the Property sold by the Bankruptcy Trustee with the aid of Martin and Lightfoot, and incurring opportunity costs and the loss of his time. Had Martin and Lightfoot not helped the bankruptcy trustee sell the subject property, there's a good chance Plaintiff could have retained the property

passed through at the end of his bankruptcy.  (It is very difficult to sell raw land, especially near

San Pedro Sula, frequently known in recent years as the murder capital of the world).

### Count IV Breach of Fiduciary Duty – Martin & Lightfoot

51. Plaintiff realleges paragraphs 1-29 as if fully set out herein.

52. The Defendants, as Plaintiff's agents, owed Plaintiff a fiduciary duty to deal fairly and honestly

with him and to not elevate their personal interests above the interests of the Partnership. The

Defendants judicially admitted in their state court complaint that they had a duty to act in the

highest good faith in connection with the objectives of the partnership which was **not** dissolved

by the Stipulation of settlement.

53. The Plaintiff's breached their fiduciary duty to the Plaintiff in at least the following ways:

(a) By not actually working towards the goals of the project in Honduras.  Defendants
    essentially began their retirement years early, but accepted Plaintiff's loans and made
    assurances of future progress.
(b) By suing the Plaintiff at a time they knew him to be financially vulnerable for monies to
    which they knew they were not entitled;
(c) By assisting the Trustee (Janina Hoskins) in Plaintiff's bankruptcy in selling the Property to
    the Plaintiff's detriment.

54. The Plaintiff has been damaged by Martin's and Lightfoot's fiduciary breaches in that he loaned

monies to the Defendants (not repaid); he lost the (actual, full) value of the Property sold by the

Bankruptcy Trustee with the aid of Martin and Lightfoot, and incurring opportunity costs and

the loss of his time.  Had Martin and Lightfoot not helped the bankruptcy trustee sell the subject

property, Plaintiff could have gleaned 8 digits of revenue from the property.  A licensed and

bonded appraiser will testify at trial as to the full revenues and profits that could have been

gained in developing the property, well in excess of the approximately $4 million dollar value as permitted raw land.

55. Further, the Plaintiff has also lost any further profits that could have been made over the years by reinvesting funds from the sales of this Property and thus been further damaged ("further opportunity cost").

## Count VI  Breach of Contract – Martin & Lightfoot

56. Plaintiff realleges paragraphs 1-29 as if fully set out herein.

57. By their acts of nonfeasance, e.g. non-performance of duties, repudiation of contractual duties mid-way through the contract and misfeasance, including fraudulently filing suit to recover unearned compensation and also helping the Trustee sell the property to a third party, the Defendants materially breached the parties' Partnership Agreement.

58. Plaintiff has been damaged by the Defendants' breaches of contract by the loss of amounts loaned to the Defendants and the loss of the value of the Property sold by the Trustee and the loss of time and related opportunity costs imposed by the Defendants' fraudulent lawsuit.

59. Had the Defendants carried out their required acts and duties in the contract, Plaintiff could have gleaned 8 digits of revenue from property sales of the 150+ lots it was subdivided into.

60. Further, the Plaintiff has also lost any further profits ("further opportunity cost") that could have been made over the years by reinvesting funds from the sale of this development Property and thus been further damaged.

13

**Count VII - Misappropriation of Trade Secrets - Martin & Lightfoot**

61. The Plaintiff realleges paragraphs 1-23 as if fully set out herein.

62. Pursuant to CCP 3426.1(b)(ii) and the Defend Trade Secrets Act the Defendants acquired confidential information belonging to Plaintiff under circumstances (e.g. a fiduciary relation) giving rise to a duty to maintain its secrecy or limit its use.

63. Specifically, the Plaintiff's business model was novel and proprietary in at least the following respects:

    (a) The Plaintiff's methods for identification, valuation, and acquisition of properties;
    (b) The Plaintiff's precise sequence of preliminary steps to develop properties that (i) increased their value for further development but (ii) limited the Plaintiff's initial investment;
    (c) The Plaintiff's utilization of his credibility and branding to persuade some sellers to finance his development activities
    (d) Acquisition of distressed properties and distressed debt, including non-performing notes and loans.

64. The Plaintiff's Business Methods were valuable and concrete enough to be protectable under California law. The Plaintiff had, in effect, created an intermediary position between pure land speculation and development that differed from the function any other broker, developer, or investor served. The Plaintiff had identified those preliminary steps of property improvement that delivered the most appreciation in value for the least investment. Further, the Plaintiff's exploration of concepts of purchasing distressed properties and distressed notes and mortgages to acquire properties or cash flow also are deemed to provide exponential returns on investment when properly applied.

65. The Plaintiff took all reasonable precautions to preserve the confidentiality of Plaintiff's Trade Secrets. The Plaintiff only disclosed Plaintiff's Trade Secrets in a contractual context such as the Partnership Agreement that created a fiduciary relation.

66. The Defendants misappropriated the Plaintiff's trade secrets in connection with their solicitation of a bribe from the Trustee and subsequent fire sale of the property.

67. Upon information and belief, the Defendants conjunctively misappropriated the Plaintiff's Trade Secrets by inducing disclosure from the Plaintiff in the context of a fiduciary and contractual relation and then misappropriating the value by utilizing them in further investments made by the Defendants.

68. The Plaintiff has been damaged by the Defendants' acts of misappropriation by the loss of his rightful profits (or reasonable royalty fee) for the misapplication of Plaintiff's Business Method to later transactions by Defendants.

**Count VII Accounting**

69. Plaintiff realleges paragraphs 1-29 as if fully set out herein.

70. Plaintiff, as partner and principal, is entitled to an accounting of all funds misspent by the Defendants including living expenses, loans made, and sums converted in relation to the wrongful sale of the Property.

71. Plaintiff is also entitled to an accounting of all profits obtained by the Defendants as a result of their misappropriation of Plaintiff's Trade Secrets and/or other trade secrets of Plaintiff in

transactions that post-date the parties' partnership.  If applicable, the Plaintiff should be compensated with those profits.

72. Further, the Plaintiff has also lost any further profits that could have been made over the years by reinvesting funds from the sale of this development Property ("further opportunity cost") and thus been further damaged, and the Accounting should do its best to calculate those reasonable amounts, using the assistance of licensed professional experts.

[rest of this page blank; Prayer for Relief follows on the next page]

WHEREFORE, Plaintiff prays that this Court enter Judgement:

(a) As to Count I As to Count I for restitution of all assets and monies converted plus the imposition of punitive damages in an amount sufficient to punish and deter similar wrongdoing in the future;

(b) As to Count II for Breach of the Settlement, for Rescission of the Settlement Agreement;

(c) As to Count III for Breach of the Covenant of Good Faith and Fair Dealing for damages caused by Defendant's bad faith in an amount to be determined at trial plus the imposition of punitive damages for the fraudulent nature of the breach;

(d) As to Count IV for inducing breach of trust, for damages caused by the Defendant's inducement in an amount to be determined at trial, plus the imposition of punitive damages in an amount sufficient to punish and deter the Defendant from inducing breach of trust in the future;

(e) As to Count V for breach of Fiduciary Duty, for damages caused by Defendants' acts of fiduciary breach, in an amount to be determined at trial, plus the imposition of punitive damages in an amount sufficient to punish and deter similar wrongful acts by Defendants in the future;

(f) As to Count VI for damages caused by Defendants' breaches of contract to be proved at trial;

(g) As to Count VII, for damages caused by Defendants' acts of misappropriation, including lost profits and/or a reasonable royalty rate for all transactions in which Plaintiff's secrets were misappropriated in an amount to be proved at trial plus double damages for wilfulness pursuant to the Defend Trade Secrets Act;

(h) As to Count VIII for an accounting to determine the exact amounts misappropriated and converted by Defendants, as well as the current balance of Defendants' debt to Plaintiff. The

accounting should also take in to account the full damages, including lost revenue and profits from Defendants' breaches and misappropriation.  Further, the accounting should also calculate the "future opportunity cost".

(i) For all costs of this legal complaint, from filing and administrative and court reporter fees, along with all paralegal costs and travel, copying, printing, mailing, filing, serving needed legal documents, expert witnesses and the cost of necessary evidence.

(j) For paralegal fees, for the Plaintiff's time in having to represent himself, while he cannot afford an attorney, and for future attorneys' fees.

(k) And for such other and further relief as this Court deems just.



Respectfully submitted,


_____

Carl A. Wescott, *pro se*

18